# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA

99 OCT 27 P III: 22

CLERK US DISTRICT
MPA, FLORIDA

|  |  |  |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 99-1558 CIV-T-23F |
| v. | ) ) | |
| R.J. FITZGERALD & CO., INC., RAYMOND FITZGERALD, LEIZA FITZGERALD, GREG BURNETT, AL CORINGRATO, and CHUCK KOWALSKI, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMMISSION'S OPPOSITION MEMORANDUM TO DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

Defendants Raymond Fitzgerald, Leiza Fitzgerald, Greg Burnett, Chuck Kowalski, and

R.J. Fitzgerald & Co. ("RJFCO") have moved to dismiss the Complaint in this action for failing

to plead fraud with particularity and failing to state claims for relief satisfactorily.  The

Complaint charges Defendants with violating various provisions of the Commodity Exchange

Act ("CEA").  The Complaint contains six counts, described briefly below:

> Count I – alleges that Raymond Fitzgerald deceived or attempted to deceive customers or potential customers in connection with any order to make a sale of commodity futures contracts and that RJFCO is also liable for these violations.

> Count II – alleges that Raymond Fitzgerald, Leiza Fitzgerald, Greg Burnett, and Chuck Kowalski defrauded or attempted to defraud customers and potential customers in connection with commodity option contracts and that RJFCO is also liable for these violations.

> Count III – alleges that Raymond Fitzgerald, Greg Burnett, and Chuck Kowalski operated RJFCO to cheat/defraud or to attempt to cheat/defraud customers and that RJFCO is also liable for these violations.

1



Count IV – alleges that Raymond Fitzgerald, Greg Burnett, and Chuck Kowalski, churned or attempted to churn customer accounts and that RJFCO is also liable for these violations.

Count V – alleges that Raymond Fitzgerald is liable for his employees' failure to provide required risk disclosures to clients.

Count VI – alleges that Raymond Fitzgerald, Leiza Fitzgerald, and Greg Burnett, failed to supervise adequately RJFCO associated persons.

The Commission extensively describes the underlying acts and transactions that support its claims for relief and thereby provides Defendants notice of the claims against them. The Complaint includes approximately 70 enumerated paragraphs, extending over 25 pages, which contain the factual allegations upon which the claims are based. Another 33 paragraphs attribute specific factual allegations to the various Defendants and assign liability according to their acts and omissions. Despite the Commission's abundant specificity, Defendants allege that the Complaint is a "shot gun" pleading and fails to satisfactorily state claims for relief. Defendants' arguments supporting its motion are meritless.

## II.    STANDARD OF REVIEW

The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. Anderson v. Transglobe Energy Corp., 35 F.Supp. 2d 1363, 1366 (M.D. Fla. 1999). When evaluating a motion to dismiss, a court must accept a plaintiff's well pled facts as true and construe the complaint in a light most favorable to the plaintiff. Id. A court should dismiss a case only if it appears "beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957); see Executive 100, Inc. v. Martin County, 922 F.2d 1536 (11th Cir. 1991) (dismissal is appropriate only when no construction of the factual allegations of the complaint will support a cause of action); Anderson, 35 F.Supp. 2d at 1365. Consequently, motions to dismiss are looked

2

upon with disfavor and rarely granted. <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997).

## III. THE COMMISSION'S ALLEGATIONS ARE SUFFICIENTLY PARTICULAR

One of Defendants' primary arguments for dismissal of the Complaint is that the Complaint fails to plead allegations of fraud with sufficient particularity. <u>See</u> Defendants Memorandum in Support of Motion to Dismiss ("Defs. Mem.") at 3, 5-9, 11-14, 16-17. Defendants contend generally that the Complaint lacks sufficient particularity because it neither specifies precise times and dates associated with the alleged fraudulent conduct nor does it, in some instances, recite verbatim the fraudulent representations. To support its claim that such specificity is required to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, Defendants mischaracterize the Eleventh Circuit's opinion in <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, (11th Cir. 1997). Defendants claim that the Court in <u>Brooks</u> "*requires* a fraud complaint to include" the precise date and time of the alleged fraudulent acts as well as verbatim representations of the fraudulent statements or omissions. Defs. Mem. at 7 (emphasis added). Contrary to the Defendants' claim – and only two sentences away from the language Defendants quote to this Court – the Court in <u>Brooks</u> actually provides that a complaint *need not* allege precise dates and times, nor must it contain verbatim recitations of fraudulent statements to satisfy Rule 9(b). <u>Brooks</u>, 116 F.3d at 1371 (stating "alternative means are also available to satisfy" Rule 9(b)). Instead, the Court in <u>Brooks</u> noted that allegations of fraud that describe the nature and subject of the alleged misrepresentations are sufficient to satisfy Rule 9(b). <u>Id.</u> (citing <u>Seville Industrial Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d at 786, 791(3d Cir. 1984).

3

To fulfill the requirements of Rule 9(b), a complaint must "afford defendants fair notice of the nature of plaintiff's claim and the grounds upon which it is based." Zuckerman v. Franz, 573 F.Supp. 351, 355 (S.D. Fla. 1983). The allegations must be specific enough "so that Defendants will be able to respond effectively, eliminate those complaints filed as a pretext for discovery of unknown wrongs, and to protect Defendants from unfounded wrongdoing." Fla. Dept. of Insur. v. Debenture Guaranty, 921 F.Supp. 750, 753 (M.D. Fla. 1996); see also Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985) (finding that the "clear intent" of Rule 9(b) is to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.") Moreover, the requirements of Rule 9(b) must be harmonized with requirement of notice pleading pursuant to Rule 8 of the Federal Rules of Civil Procedure. Friedlander, 755 F.2d at 813; Debenture Guaranty, 921 F.Supp. at 754; Zuckerman, 573 F.Supp. at 356. Accordingly, to satisfy the strictures of Rule 9(b), a complaint "need only provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud." Debenture Guaranty, 921 F.Supp. at 753 (citing In re Checkers Sec. Lit., 858 F.Supp. 168, 1175 (M.D. Fla. 1994).

Throughout the Complaint, the Commission either describes the nature and subject of fraudulent statements and conduct or actually recites verbatim fraudulent statements upon which it bases its claims for relief. The allegations of solicitation fraud contained in Complaint paragraphs 30-47 describe misrepresentations and omissions made to hundreds of customers and potential customers and explain why they were fraudulent. Moreover, the Complaint also alleges that the Defendants knew or recklessly disregarded the fact that these statements were false,

deceptive, and misleading.[1] The fraudulent acts are alleged to have occurred sometime between

January 1996 and July 1998. Accordingly, the Complaint meets particularity requirements of

Rule 9(b). See Metrahealth Ins. Co. v. Anclote Psychiatric Hospital, Inc., No. 96-2547-Civ-T-

17C, 1997 WL 728084, *2 (M.D. Fla. Oct. 23, 1997) (finding Rule 9(b) requirements less

stringent when alleged fraud occurs over an extended period of time thereby excusing plaintiff

from specifying exact dates and places).[2]

Defendants also assert that the entire Complaint is fatally flawed because the claims for

relief incorporate by reference allegations made earlier in the pleading. Defs. Mem. at 5-6.

Incorporating previous allegations by reference, however, is a proper form of pleading. Debenture

Guaranty, 921 F.Supp. at 754 (stating "incorporation by reference is proper pleading.")

### A. The Commission's Specific Allegations Are Sufficiently Particular and Defendants' Contrary Arguments Should Fail

***Counts I and II*** - Defendants assign fault to specific allegations within each of the

individual counts in the Complaint.[3] For example, Defendants complain that the use of the term

"about" in paragraph 38 of the Complaint introduces insurmountable vagueness into that

---

[1] Proof of scienter for Sections 4b and 4c(b) of the CEA and Regulations 32.9 and 33.10 of the Commission's Rules, may be established through proof of recklessness. Hammond v. Smith Barney, Harris Upham & Co. [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶27,206 at 45,810 (CFTC March 1, 1990); CFTC v. Savage, 611 F.2d 270, 283 (9th Cir. 1979) (finding scienter supported by proof of recklessness).

[2] See also Vaccariello v. Financial Partners Brokerage, Ltd., No. 82-C-5910, 1983 WL 1367, *2 (N.D. Ill. July 29, 1983) (finding Rule 9(b) requirements satisfied where complaint contained allegations of commodity fraud spanning over an extended time period even though it did not specify time, place, and manner of the misrepresentations).

[3] Defendants also argue elsewhere in the motion that the Commission has not alleged sufficient facts to support a finding that RJFCO was operated in a systemic, fraudulent manner. Defs. Mem. at 8. In making this argument, Defendants focus only on one allegation of fraud to the exclusion of all others. Id. By way of response, the Commission directs the Court's attention to the numerous factual allegations of fraud contained in the Complaint to the effect that Defendants are liable for fraudulently soliciting customers, ¶¶37-47, failing to disclose required

document. Defs. Mem. at 11. The passage cited to by Defendants uses the term "about" unambiguously to mean "in reference to." See Complaint at ¶ 38. Defendants, however, misconstrue the term "about" to mean "approximately" and then argue that such terms of approximation represent an unacceptable method of pleading. Defs. Mem. at 11. Because Defendants' argument is inapplicable to the Commission's allegations, it should be disregarded.

Defendants also argue that the Complaint internally contradicts itself by claiming that customers were not provided trading advisors while also claiming that RJFCO employees traded client accounts. Defs. Mem. at 13. The Complaint never alleges that customers were not provided trading advisors. Rather, the Complaint does allege that Defendants represented that they would provide customers with individualized, personal trading advice, but actually, they provided customers with impersonal, generic trading advice that was unrelated to customers' individual trading objectives, risk tolerance, or equity level. Complaint at ¶¶ 38, 41. As alleged, the misrepresentation is material and fraudulent. See Saxe v. E.F. Hutton & Co., Inc., 789 F.2d 105, 112 (9th Cir. 1986); In re FNTC, [1992-1994 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶26,142 (CCH) at 41,788, n. 20, (CFTC July 20, 1994), 1994 WL 378010, *11, n. 20.

Defendants also contend that the Complaint fails to link particular allegations of fraud to individual Defendants. Defs. Mem. at 5, 7, 12. As support for that contention, Defendants claim that the universal practice of re-alleging previous factual paragraphs somehow lumps Defendants together and results in charging "all defendants with all misconduct from the entire period of January 1996 to July 1998." Id. at 8. Defendants' argument is based on a tortured reading of the Complaint designed to create ambiguity where none exists. Each count of the Complaint explicitly identifies which factual allegations are attributed to each individual defendant.

_____

risk disclosures, ¶¶48-51, cheated customers while trading their accounts, ¶¶52-66, and falsified

Complaint at ¶¶ 72, 76-80, 82, 83, 85-87, 90-92, 94, 96, 98, 101-103.  Thus, contrary to

Defendants' contention that the Complaint is a "shotgun" pleading, the Complaint carefully and

in detail notifies each Defendant about the conduct of which he or she is accused.[4]  See Blanco v.

City of Clearwater, 9 F.Supp. 2d 1316, 1318 (M.D. Fla. 1998) (a shotgun pleading must be "so

disorganized and ambiguous that it is almost impossible to discern precisely what it is these

(plaintiffs) are claiming.") (quoting Cramer v. Florida, 117 F.3d 1258, 1261 (11th Cir. 1997).

Defendants also argue that the Complaint fails to allege any basis for liability for conduct

by Raymond Fitzgerald and Burnett as described in paragraph 40.[5]  Defs. Mem at 12.  An

accurate reading of the Complaint shows that Defendant Burnett is *not* assigned liability for acts

described in paragraph 40.  See Complaint at ¶ 79.  Next, contrary to Defendants' argument, the

Complaint specifically alleges the basis for attributing the fraudulent acts described in paragraph

40 to Raymond Fitzgerald.  In paragraphs 27 and 28 of the Complaint the Commission alleges

that Raymond Fitzgerald instructed Leiza Fitzgerald on what to teach in the training course

described in paragraph 40, and thereafter Leiza Fitzgerald instructed Al Corringrato.  Paragraphs

27 and 28 incorporated by reference into Count II at paragraph 74.  Accordingly, Raymond

Fitzgerald's liability is fully alleged.

---

documents, ¶¶ 67-69.

[4]     A shotgun pleading is a pleading where: one has to guess at the number of claims for
relief actually alleged, Fikes v. City of Daphne, 79 F.3d 1079, 1082 (11th Cir. 1996); numerous
allegations immaterial to the claims for relief are included, Johnson Enter. of Jacksonville v. FPL
Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1997); and, it is "virtually impossible to know which
allegations of fact are intended to support which claims for relief," Anderson v. Central Florida
Comm. College, 77 F.3d 364, 366 (11th Cir. 1996).
[5]     Defendants' argument is based in part on the notion that the absence of Raymond
Fitzgerald's name in paragraph 40 precludes him from being assigned liability for conduct
described therein.  In short, Defendants' urge this Court to require an overly formalistic method
of pleading that runs contrary to Rule 8.  Established precedent, however, holds that in
evaluating whether a complaint properly alleges liability against a Defendant, the court is to

Finally, Defendants contend that the Complaint is insufficient since it does not allege specific facts that show Defendants acted with scienter when they falsely informed customers and potential customers that only one customer complaint had been made against them. Defs. Mem. at 12-13. Defendants' argument is based upon a misunderstanding of the law. Rule 9(b) requires only a general averment of scienter. Fed.R.Civ.P. 9(b) (stating "malice, intent, knowledge and other conditions of mind of a person maybe averred generally. The Commission satisfied this standard in paragraph 42 of the Complaint when it alleged Defendants possessed scienter for acts described in paragraph 40.

*Count III* - With regard to Count III, Defendants argue that the Complaint fails to satisfy Rule 9(b) because precise, verbatim statements are not quoted in the Complaint. Defs. Mem. at 14. Once again, Defendants' argument runs contrary to recent law in this jurisdiction. Metrahealth Ins. Co. v. Anclote Psychiatric Hospital, Inc., No. 96-2547-Civ-T-17C, 1997 WL 728084, *2 (M.D. Fla. Oct. 23, 1997) (finding that complaint satisfies Rule 9(b) where fraudulent statements are paraphrased rather than quoted verbatim); Debenture Guaranty, 921 F.Supp. at 753 (finding that to satisfy Rule 9(b) the complaint "need only provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud."). The allegations comprising Count III, which accuse certain Defendants of cheating or the attempted cheating of customers, identifies the conduct which underlies the Commission's claims, explains why it violates the CEA, and assigns a particular time period during which the alleged conduct occurred. Accordingly, it meets the particularity requirement of Rule 9(b).

*Count IV* – Count IV of the Complaint alleges that certain Defendants churned or attempted to churn customer accounts. First, Defendants contend that the Commission failed to

consider all of the complaint's allegations, not isolated paragraphs. See Conley, 355 U.S. at 45-

allege churning with particularity because the Complaint does not make, or sufficiently make, certain factual allegations. See Defs. Mem. at 18. To support this argument, Defendants once again misquote, and miscite,[6] an Administrative Law Judge decision, Patch v. Concorde Trading Group, Inc., [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶26,253 (ALJ Oct.31, 1994). See Defs. Mem. at 18. Contrary to Defendants' representation, Patch does *not* state that the Commission must allege several factors to properly plead *de facto* control in a churning case. Instead, the Administrative Law Judge ("ALJ") in that decision only notes that *de facto* control can be *proven* through several different methods. Patch, *supra* ¶26,253 at 42,125, 1994 WL 597154, *5. Nowhere in that initial decision does the ALJ discuss what allegations of control are necessary to sufficiently plead *de facto* control. Indeed, Rule 9(b) does not require a plaintiff to allege the underlying facts that will support a finding of *de facto* control in a churning claim. Zaretsky v. E.F. Hutton, 509 F.Supp. 68, 74 (S.D.N.Y. 1981) (holding "Rule 9(b) does not require that plaintiffs state in their complaint the evidence they will introduce to prove the element of control.") Rather, a simple, straightforward allegation that defendants exercised *de facto* control is sufficient.[7] Id. The Complaint makes such an allegation, see Complaint ¶ 57,

---

46 (courts evaluate sufficiency of complaint by reviewing entire set of facts).

[6] Defendants cite to Patch as a Commission opinion. It is not. Rather, the decision cited to by Defendants was authored by an Administrative Law Judge and the Commission expressly ordered that it *should not* be cited as Commission precedent or regarded as an expression of the Commission's views. See Patch v. Concorde Trading Group, Inc., CFTC Docket No. 93-R025, 1995 WL 581220 (CFTC Sept. 27, 1995). Throughout Defendants' memorandum, Defendants cite and refer to ALJ decisions as if they were in fact Commission opinions. See, e.g. Defs.Mem. at 9 (Bragg), 10 (Taylor), 11, (Modlin), and 15 (Melnick).

[7] As noted earlier, averments relating to the condition of a mind need only be pleaded generally. See Fed.R.Civ.P. 9(b).

and also includes factual allegations that support such a claim, see id. at ¶¶ 59-66.  Accordingly, the Commission's claim of *de facto* control clearly satisfies the requirements of Rule 9(b).[8]

Second, Defendants argue that the Complaint fails to allege that the churning victims' accounts were traded "excessively."[9]  Defs. Mem. at 17-18.  The term "churning" is a shorthand expression for a type of fraudulent conduct in a broker-customer relationship where the broker trades a relying customer's account to generate commissions.  See Arceneaux v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 767 F.2d 1498, 1501 (11th Cir. 1985) ("churning occurs when a . . . broker buys and sells securities for a customer's account, without regard to the customer's investment interests, for the purpose of generating commissions.");  Armstrong v. McAlpin, 699 F.2d 79, 90 (2nd Cir. 1983).  A fiduciary duty is breached, and fraud occurs, because the broker trades the account to benefit himself rather than the client.

Courts frequently state that proof of "excessive trading" is essential to find that a broker has acted contrary to client's interests to further his own.  See, e.g., Arceneaux, 767 F.2d at 1501.  The Commission believes, however, that the practice of requiring evidence of "excessive trading" is misguided for it confuses a method of proof with a legal element.[10]  A heightened

---

[8]  Defendants also argue that the Complaint fails to allege that Burnett controlled the trading in customer accounts. Defs. Mem. at 15. Defendants are mistaken. See Complaint at ¶ 57.

[9]  Defendants also briefly argue that the Commission only alleged that one trade in four accounts was churned. Defs. Mem. at 17. Defendants' argument is unfounded. The Commission clearly set forth in paragraphs 59-66 seven accounts that were churned and does not limit its allegation of churning to any single trade. See Complaint at ¶¶59-66.

[10]  The practice of referring to "excessive trading" as an element of proof most likely developed from the practical reality that direct proof of a broker's purpose underlying his trading of a customer's account is rarely available. For example, in In re Paragon, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,266 at 38,847 (CFTC April 1, 1992), 1992 WL 74261, *10, the Commission noted that where direct evidence exists to establish that the account was traded to generate commissions without regard for the client's interests (such as the testimony of a broker with knowledge of the trading) statistical evidence is *supplemental*, and not required. Id. In other words, proof of the frequency or quantity of trading is not required because it is not

level or frequency of trading is only a possible manifestation of the underlying fraud, which is the act of disregarding customer interests to gain commissions for one's self. As explained by Professor Poser:

> The amount of trading in a customer's account, which gives the churning offense its name, is relevant only because an excessive amount of trading creates an inference that the broker has disregarded his customer's interests in order to gain commissions for himself, thereby acting fraudulently to the customer.

Poser, Options Account Fraud: Securities Churning in a New Context, 39 Bus. Law 571, 572 (1984). A broker trading an account to the detriment of his client does not avoid committing fraud simply because the frequency of his fraudulent trading fails to reach some definitive threshold. Rather, fraud is committed where the broker trades an account "without regard to the customer's investment interests, for the purpose of generating commissions." Arceneaux, 767 F.2d at 1501.

Consistent with this more accurate description of churning, Commission opinions have held that the determination of whether an account has been churned does not turn on whether a particular quantity or frequency of trading has occurred.[11]   See, e.g. In re Lincolnwood Commodities, [1982-84 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,986 at 28,251 n. 94 (CFTC Jan. 31, 1984), 1984 WL 48104, 35 n. 94 (noting that "excessive trading 'is a fact question which cannot be determined by any precise rule or formula.'"). Instead, churning turns on whether the controlling account executive recommended trades to generate commissions without regard for the client's interests. See In the Matter of Cayman Assoc., Ltd., [1986-1987

---

needed to create the inference that the account was traded fraudulently.

[11]    Although relevant Commission opinions frequently discuss churning in terms of whether an account has been "excessively traded," such discussions typically occur when the record is comprised solely of circumstantial evidence. See, e.g., In re Paragon, supra at 38,847. As noted above, in the absence of direct evidence of a broker's purpose for trading a customer's account, proof usually turns to quantitative factors from which inferences can be drawn.

Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 23,033 at 32,051 (CFTC April 21, 1986), 1986

WL 68384,*5 (stating "the very essence of churning" is the act of "generat[ing] commissions

without regard for the customer's economic interests."); Fields v. Cayman Associates, Ltd.,

[1984-1986 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 22,688 at 30,928-929 (CFTC Jan. 2,

1985), 1985 WL 56217, *3 (noting that "the essence of churning is not merely large

commissions or frequent trades" but whether "the trading strategy was, in fact, designed to

generate commissions"). Consequently, the absence of the phrase "excessive trading" in the

Complaint is immaterial. A claim of churning is sufficient if it is based on allegations that

brokers traded customers' accounts without regard for the customers' interest and for the purpose

of generating commissions.[12]

## IV. THE COMMISSION'S CLAIMS FOR RELIEF ARE LEGALLY SUFFICIENT

### A. The Commission Correctly Pleaded Its Claims For Relief

*Aiding and Abetting Claims* - Defendants allege that the aiding and abetting claims

under 13(a) of the CEA against R. Fitzgerald, Burnett, and Kowalski must be dismissed because

the Complaint fails to adequately plead intent required to prove a claim of aiding and abetting.

Defs. Mem. at 15-16. Contrary to Defendants' conclusory assertion, however, the Commission

clearly alleged the intent required to prove claims of aiding and abetting liability. An individual

will be found liable under Section 13(a) of the CEA who aids and abets another in the violation

of a statutory provision or regulation by knowingly participating in an unlawful venture as

---

[12]     Defendants also argue briefly that the Commission's churning allegations are insufficient because they do not prove a pattern of churning throughout all the customers' accounts. Defs. Mem. at 18. There is no requirement that a pattern of churning must be proven to establish Defendants' liability for discrete acts of churning. See In re Rosenthal [1984-1986 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶22,221 at 29,172 (CFTC June 6, 1984), 1984 WL 48219, *9 (noting proof of a pattern of fraud is not required because even an occasional violation may itself be an extremely serious matter.")

something he or she wishes to bring about, and seeks by those actions to make it successful. In re Lincolnwood, *supra*, ¶ 21,986 at 28,254, 1984 WL 48104, *26; In re Richardson Securities, Inc., [1980-1982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶21,145 at 24,646 (CFTC Jan. 27, 1981), CFTC Docket No. 78-10, 1981 WL 26081, *8.  As set out in the Complaint at ¶¶ 52-66 and 70, Defendants R. Fitzgerald, Burnett, and Kowalski knowingly participated in the fraudulent activities at RJFCO and acted in a way to bring about those activities.  For example, among other things, Defendants knowingly instructed Brokers to make materially false and misleading statements, including statements that urgent events had recently occurred or were about to occur in the market which, if the client acted quickly, would provide the client with the opportunity to make profits.  Complaint at ¶54.  In addition, Defendants R. Fitzgerald, Burnett, and Kowalski developed "position trades," putting all clients into the same trades regardless of the client's situation, knowing that the firm's clients had been told by RJFCO AP's and RJFCO advertisements that each client received individualized trading advice. Complaint at ¶ 55. Defendants knowingly participated in the illegal activities of RJFCO employees and by their efforts sought to bring about these wrongful activities.  See In re Lincolnwood, *supra*, ¶ 21,986 at 28,254, 1984 WL 48104, *26.  Therefore, the Complaint sufficiently pleads the allegations of aiding and abetting liability under Section 13(a) of the CEA against R. Fitzgerald, Burnett, and Kowalski and these allegations should not be dismissed.

*Controlling Person Claims* - Defendant R. Fitzgerald argues that the Complaint fails to properly plead allegations of controlling person liability under Section 13(b) of the CEA against him and that these allegations should be dismissed. Defs. Mem. at 16, 19.  To plead controlling person liability a complaint must allege that the respondent (i) possessed the power and the ability to control the activity of another person that gave rise to that person's liability, and (ii)

either did not act in good faith, or else knowingly induced, directly or indirectly, the act or acts constituting the violation. In re Glass and Guttman, [Current Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,337 at 46,561-4 (CFTC April 27, 1998). A controlling person acts in bad faith if he recklessly fails to maintain a reasonably adequate system of internal supervision or control over the liable employee or did not enforce the system of supervision with any reasonable diligence. Monieson v. CFTC, 996 F.2d 852, 860 (7th Cir. 1993). A controlling person knowingly induces the violative acts if he possessed actual or constructive knowledge of the core activities that constituted the violation at issue and allowed the violation to continue. In re Spiegel, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,103 at 34,767 (CFTC Jan. 12, 1988). The Complaint has fulfilled the burden of pleading required under these standards. See Complaint ¶¶ 37-47, 54, 56, 59, 61, 64-65, and 70.

Defendants assert that the Complaint insufficiently alleges controlling person liability because it does not plead that R. Fitzgerald acted in "culpable participation," citing to CFTC v. Standard Forex, Inc., CV-93-0088CCP, 1993 WL 809966, *13 (E.D.N.Y. Aug. 9, 1993). Defs. Mem. at 16. Standard Forex, however, uses the phrase "culpable participation" as a paraphrase of the actual benchmark of controlling person liability under the CEA. The Court in Standard Forex states "By its express terms Section 13(b) . . . applies only where there is either an absence of good faith on the part of the controlling person or some knowing inducement by the controlling person of the wrongful conduct, and this obviously is a requirement of culpability, as opposed to a negligence or strict liability standard." Standard Forex, supra at *13. This expression of the scienter standard for controlling person liability is the same as the standard discussed above and alleged in the Complaint. Consequently, Defendants' argument is meritless.

***Count V*** - Defendants also allege that Count V fails to state a claim for relief. Count V alleges that Defendants did not provide adequate risk disclosure statements in violation of CFTC Regulation 33.7(a) and (b). Defendants argue that this claim for relief is flawed because the Complaint "only" references that Defendants "sometimes" failed to provide risk disclosure statements to prospective customers. Defs. Mem. at 18-19. Clearly, however, any failure to provide risk disclosures required by CFTC Regulation 33.7(a) and (b) constitutes an actionable violation. Defendants' suggestion that intermittent violations are not actionable has no validity, and, not surprisingly, Defendants fail to cite any authority for their novel argument. Paragraphs 95 through 98 of the Complaint properly state a claim that Defendants failed to provide risk disclosure statements to prospective customers in violation of CFTC Regulation 33.7(a) and (b).

***Count VI*** - Fourth, Defendants argue that the Complaint alleges that each of the Defendants failed to supervise him- or herself. Defs. Mem. at 19. The Complaint does not allege, however, that each of the Defendants failed to supervise themselves but, instead, alleges that each of the Defendants failed to supervise diligently his or her supervisees. For example, in paragraphs 101 and 102 of the Complaint, the allegations state that R. Fitzgerald, L. Fitzgerald, and Coringrato failed to supervise diligently the sales practices and sales solicitations of RJFCO Brokers. Paragraph 103 of the Complaint alleges that Burnett failed to supervise diligently the sales practices and sales solicitations of RJFCO Traders. The allegations that the Defendants violated Regulation 166.3 are properly pleaded.[13]

---

[13]     Defendants claim that Count VI fails to state a claim for failure to supervise, Defs. Mem. at 19, arguing that because this claim "references and relies upon all previous allegations and counts which are defective as stated above, this claim must be dismissed. . . " Defs. Mem. at 19. As discussed *supra* at 5, there is no infirmity in the practice of incorporating allegations by reference and the claims of failure to supervise are therefore well pled.

Defendants also argue that the claims for failure to supervise under Regulation 166.3 against L. Fitzgerald and Burnett are insufficient because they: (1) include the period of time that they were not registered persons; and (2) fail to allege sufficient facts to demonstrate that either L. Fitzgerald or Burnett had supervisory roles that would subject them to liability under Regulation 166.3. Defs. Mem. at 20. Both arguments are meritless. First, the Complaint simply alleges that "*during* the relevant time period" these two Defendants acted as supervisors, not that they supervised employees for the entire time period. <u>See</u> Complaint at ¶100. Next, the Complaint clearly sets forth factual allegations that show L. Fitzgerald trained and supervised Brokers while Burnett held supervisory control over the Traders. <u>See</u> Complaint at ¶¶23, 31, 34, 35, 38, 40, 41, 43, 45, 54, 56, 58, 68, 70,

### B.    Defendants' Claims of Puffery Are Unavailing

Defendants argue that some of the Complaint's allegations of fraud are legally insufficient because they accuse Defendants of nothing more than "puffery." <u>See</u> Defs. Mem. at 9-11. Defendants' argument is flawed for several reasons. By characterizing certain representations as mere "puffing," Defendants convert their motion to one for summary judgment since a determination of "puffing" is a fact based inquiry and requires resolution by a finder of fact. <u>Harvey M. Jasper Retirement Trust v. Ivax Corp.</u>, 920 F.Supp. 1260, 1268 (S.D. Fla. 1995). Defendants have not submitted any sworn evidence on which this court could make such a decision. Accordingly, dismissal based on Defendants' unfounded claim of "puffing" is inappropriate.

Defendants' argument also fails because the allegations it characterizes as "puffery" do not fit within the Supreme Court's definition of that term. In <u>United States v. New South Farm &</u> <u>Home</u>, 241 U.S. 64, 71 (1916), the Supreme Court stated that puffing is "the mere exaggeration of

the qualities an article already has." However, when a party "assigns to the article qualities it does not possess . . . he transcends the limits of 'puffing' and engages in false representations and pretenses . . . there is deception when the article is not of the character or kind represented." Id.

The allegations Defendants characterize as "puffery" include false claims that RJFCO and its APs would educate customers, complied with the rules and regulations of regulatory entities, and provided customers with individual and personalized trading advice. These representations do not constitute "puffery" since they claim qualities and attributes that RJFCO and the other Defendants did not possess but nevertheless are alleged to have offered. Defendants' promise to educate customers is actionable because these statements were made without the intent to fulfill that promise. See Royal Palm Savings Ass'n v. Pine Trace Corp., 716 F.Supp. 1416, 1420 (M.D. Fla. 1989). Defendants' representation that they comply with regulatory rules and "do what is right" is actionable because it represents an objective fact that did not exist. New South, 241 U.S. at 71.[14] Defendants' claim that they provided customers with individual, personalized trading advice is also actionable because it is another service Defendants did not provide. Id. Accordingly, this Court should disregard Defendants' argument that these representations are puffery.

## C. The Commission's Allegations of Fraud Are Not Precluded As A Matter Of Law

Defendants also claim that the Commission has previously determined that certain statements alleged in the Complaint to be fraudulent are actually lawful to make. Defs. Mem. at 9-11. Defendants cite cases that involve allegations with only slight similarity to allegations in

---

[14] Accordingly, Defendants' argument that their false representation is likened to puffing claims such as "committed to conducting business in accordance with the law," see Defs. Mem. at 10-11, fails because the objective representation that one *is* in compliance with the law is fundamentally different from claiming that one is *committed* to comply with the law.

the instant case and which simply do not stand for the propositions Defendants attribute to them. More importantly, underlying this portion of Defendants' argument for dismissal is the faulty premise that the context and circumstances surrounding false statements are immaterial to a court's ultimate legal determination of whether such statements constitute fraud. Both the Commission and this Circuit have rejected Defendants' theory.

To prove fraud under Section 4b or 4c(b) of the CEA, and Regulations 32.9 and 33.10, the Commission must establish a person made a misrepresentation or omission of material fact with scienter. Hammond v. Smith Barney, Harris Upham & Co., Inc., [1987 –1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶24,617 at 36,657-59 (CFTC Mar. 1, 1990). The Commission need not prove reliance. JCC Inc. v. CFTC, 63 F.3d 1557, 1565 n. 23 (11th Cir. 1995). In determining whether a violation of the CEA's antifraud provisions has occurred, the surrounding circumstances and factual context must be considered. See Anderson v. Transglobe Energy Corp., 35 F.Supp. 2d 1363, 1368 (M.D. Fla. 1999) (determination of fraud requires evaluation of "total mix of facts").[15] As a result, even literally true statements may operate a fraud. See In re FNTC, [1992-1994 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶26,142 at 41,788 n.20 (CFTC July 20, 1994), 1994 WL 378010, *11 n. 20; see also In re Staryk, [Current Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶27,706 at 45,809 (CFTC Dec. 18, 1997), 1997 WL 778236, *9 (fraud can exist where literally true statements presented as a cohesive sales presentation make a false inference nearly irresistible). Thus, an inquiry into whether certain statements are fraudulent in themself or fraudulent in context, requires factual scrutiny beyond the scope of Defendants' motion.

---

[15]     Levine v. Refco, [1987 –1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶24,488 at 36,115 n. 5 (CFTC July 11, 1989), 1989 WL 242009, *4 n.5 ("In evaluating whether a particular

Further, Defendants authority fails to support any argument that the Commission's allegations have previously been found to be legal. For example, relying upon <u>Taylor v. Rand Financial</u>, Defendants argue that Commission has held that promises to educate customers about commodity futures and options trading are not deceptive as a matter of law. Defs. Mem. at 10. Defendants misconstrue this case. In <u>Taylor</u>, an ALJ – *not* the Commission as claimed by Defendants - addressed the issue of whether a sophisticated trader who controlled all of the trading in his own accounts could *prove* that he had been misled into believing that he would be educated by respondents.[16] <u>Taylor v. Rand Financial Services, Inc.</u>, [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶26,748 at 44,102 (ALJ Aug 1, 1996), 1996 WL 431801. The issue of whether a promise to educate a trader is *per se* non-actionable was not addressed. Moreover, in <u>Taylor</u>, the ALJ specifically noted that the outcome in the case would likely have been different if the plaintiff had demonstrated that respondents had misled him into believing that they would undertake some special responsibilities, including the responsibility of educating him about options trading. <u>Id.</u>, *supra* at 44,101-02, WL 431801, *6 In the instant case, the Commission has alleged, and intends to prove, that Defendants have repeatedly misled customers and potential customers by representing that they would educate them. Accordingly, these allegations, if proven, will support a finding of fraud. See <u>id.</u>

Defendants also argue that the failure to disclose customer account track records is *per se* non-actionable. Defs. Mem. at 11. Defendants cite two decisions for this claim, <u>Modlin v.</u>

---

statement is fraudulent, the statement should be viewed within the context of related representations.")

[16]     As proof of fraud, the plaintiff relied upon a one sentence remark in a promotional document that only stated "Learn more about the way coffee moves and how to invest with options." <u>Taylor</u>, *supra* at 44,102. The plaintiff did not offer any proof that respondents represented that they would educate or teach plaintiff. <u>Id.</u>

Cane[17] and Lehoczky v. Gerald, Inc. Id. Both of these decisions, however, state that the failure

to disclose customer account track records *standing alone* is not fraudulent, but where claims of

expertise or firm resources are made, then the omission of a losing track record is fraudulent.[18]

See Lehoczky v. Gerald, Inc. [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶26,441 at

42,923 (CFTC June 12, 1995), 1995 WL 355284, *9; Modlin v. Cane, [Current Transfer Binder]

Comm. Fut. L. Rep. (CCH) ¶27,392 at 46,805 (ALJ July 30, 1998), 1998 WL 429622, *10.

## V.    CONCLUSION

In summary, the Commission's Complaint satisfies the requirements of Rule 9(b) and

properly alleges facts that support its claims for relief. Accordingly, Defendants' Motion should

be denied. In the event this Court believes that any portion of the Commission's Complaint

requires greater specificity, the Commission joins in the request for oral argument and an

opportunity to amend those portions of the Complaint.

---

[17]    Although Defendants refer to Modlin as if it were a Commission order, it is merely an
ALJ decision and therefore not precedent.
[18]    Defendants also set up a straw-man argument by claiming that the Complaint alleges
fraud by charging them with representing to customers that they possess a "highly successful
trading ability," Defs. Mem. at 10, and then cite Indemnified Capital Investments v. R.J. O'Brien
for the proposition that such a claim is non-actionable. Id. at 9-10. The Commission, however,
never alleged such a fact in its Complaint. The Complaint does accuse Defendants of fraud by
representing to customers and potential customers that there is a high profit potential in trading
commodity futures and options while failing to disclose that a substantial majority of their
customers closed their accounts at a loss, often at a substantial loss. Complaint at ¶38. Such a
representation, if proven, is fraudulent. Swickard v. A.G. Edwards & Sons, [1984-1986 Transfer
Binder] (CCH) Comm. Fut. L. Rep. ¶22,522 at 30,275 (CFTC March 7, 1985) (holding that half
the truth may amount to a lie if it is understood to be the whole).

Respectfully submitted,

Joan Manley
Wendy Woods
Heather Capell
Three Lafayette Centre
1155 21st St. N.W.
Washington, D.C. 20581
(202) 418-5356
(202) 418-5358 (fax)

Plaintiff's Counsel

Dated: September 24, 1999

# CERTIFICATE OF SERVICE

I certify that on September 24, 1999, a copy of Commission's Opposition Memorandum to Defendants' Motion to Dismiss was served by overnight delivery upon Constantine Gekas, counsel for RJFCO, Raymond Fitzgerald, Leiza Fitzgerald, Greg Burnett, Chuck Kowalski, at Eleven South La Salle St., Suite 1020, Chicago IL 60603, and by first class mail upon Michael Gonzales, counsel for Al Corringrato, at Suite 100, 5020 West Cypress St., Tampa, Florida 33607.

Heather Capell